Good morning, Your Honors, and may it please the Court, Bethany Lobo for the relator Mark Defatta, and I would like to reserve two minutes of my time for rebuttal. Your Honors, you've heard my colleague Mr. Neal explain how UPS is out to cheat everyday consumers. I would just add that you should feel free to argue whatever you want, but we will consider all the arguments that have already been made as we consider this case, so there's no need to repeat. Yes, Judge Graber. UPS set out to cheat the government the exact same way, but the government had safeguards in place to protect itself and to protect its taxpayers. Specifically, the government had contracting rules in place designed to secure companies' lowest prices for taxpayer benefits, and that principle applied to how the government entered the schedule contract, and it applied to how the government entered the standard tenders at issue here. We can be certain that as to both, the government did not want to pay something more for nothing at all, but that is exactly what UPS tricked the government into doing when it fraudulently induced both types of contracts and then submitted false claims for nonexistent air service. Is it correct that UPS did not commercially offer its ground service as a method for guaranteed next day or second day delivery, even within the air and ground distances? No, Your Honor. UPS has made that argument, but we have alleged explicitly that UPS offers ground service for air and ground distances. It sells that service commercially. That wasn't the question. It was about guaranteed delivery time. Yes, Your Honor. With respect to the question about guaranteed delivery, guaranteed delivery for ground service. Is that commercially offered? Commercial time guarantees for ground service are commercially offered to certain addresses, but the issue here is that UPS has tried to The government did not request services that were commercially time guaranteed. The only time of delivery requirement that the government imposed, other than next day and two day shipping services, was a guarantee that the bidder would accomplish 95% of deliveries on time. That is a factual statement. That's not based on the specific guarantee provided commercially. And UPS promised the government 95% on time deliveries. But what does on time mean then in this context? That's what I think the question was about. What did the government's contract require for timing? The government requested, as relevant here, Your Honor, next and second day delivery services. So a 95% on time guarantee means that 95% of packages that the government shipped under the schedule contract would arrive the next day as scheduled or the second day as scheduled. That's all the government was asking for. The government did not request commercially time guaranteed services. Well, the RFP requested only proposals that were offered commercially to the general public was not being offered these time guarantees for ground services. Why would that make UPS ground responsive to the RFP? Because ground was a next day and two day service for air and ground distances and UPS offered that commercial ground service to the general public. Was that was that part of was that guarantee part of UPS's commercial promises? I'm sorry, Your Honor. So the ground service that UPS had offered commercially, did UPS attach any guarantees of delivery on that that would comply with the request for the RFP? I don't believe that UPS's commercial time guarantees are actually properly before the pleading stage. I don't think there's any appropriate record source regarding UPS's commercial time. So you're telling me that you don't know whether ground was a conforming service that should have been offered to the government? I'm disputing the idea that a commercial time guarantee was requested by the government or required by the government in order to make a service response. But Judge Arterton just referred you to the RFP and you referred to it yourself. It's right here. They wanted same day, next day, two day or three day delivery. And that's the on-time delivery that the government requested? Right. Was UPS's commercially available ground service, did it include a promise as to when it would be delivered? There was a commercial time guarantee for ground as to certain shipments. As to certain shipments, but not as to others? That's correct. Okay. Did it conform to the 95% of zip codes? The 95% of zip codes was not the geographic coverage requirement that applied to UPS under the request for proposal. What the government said is that a bidder was required to provide services that collectively reached either 95% of U.S. zip codes, whichever was greater. And we discussed this in our reply. Now UPS's bid makes crystal clear that it offers commercial service to 100% of U.S. zip codes. And so UPS's geographic coverage requirement under the RFP was 100%, not 95%. Now when you understand that, you understand that UPS actually offered the government services in its bid that did not satisfy that 100% coverage requirement. For instance, UPS offered three-day select to the government. And UPS actually said to the government that three-day select was not available to all U.S. zip codes. And UPS said explicitly to the government, not every zip code in the country can be serviced with every available service that we're offering. That's true, right? And that is true. Okay. So, so far nothing misleading. Well, so the problem that's misleading is that a service does not need to offer 95% or 100% coverage to all U.S. zip codes to be responsive to the government's request for proposal. But if a company came in and responded to the RFP and said, we satisfy the RFP because we can reach 95% of the zip codes in the country. And as to, but we can't offer same-day, next-day, two-day, three-day to all of those zip codes. And in fact, it turns out that they can't offer it to 99% of the zip codes they do service. They're sending it by slow boat. That wouldn't be a conforming claim, would it? If they were really, if they really only offered 1% coverage, that would be same-day, next-day, two-day, or three-day. That's just not a conform, that's just, that just doesn't satisfy what the government is trying to do. And everybody would know it. I'm not sure I totally understand the hypothetical Judge Bybee, but what I can say is that the government wanted for UPS 100% of services that would collectively reach all U.S. zip codes in one-day, two-day, or three-days. And Brown was responsive to the request for proposal. For some zip codes, but not for, that was not part, that was also not part of the general commercial service that UPS offered its own customers. It absolutely was part of the general commercial service that UPS offered its own customers, Your Honor. UPS sells ground service for air and ground distances. Right, but it didn't offer any guarantees. And the government didn't request any commercial time guarantees. It didn't request same-day, next-day, two-day, and three-day? No, Your Honor. The government requested services that would in fact reach their destination in one or two days, as relevant here, since we're talking about next and second-day service. And ground service, in fact, is a next and second-day service for those distances. For some, for some places, for some locations. For all of the air and ground distances, 100% of the time, ground service is a next and second-day service. It is not just a next and second-day service. It is the only next and second-day service that UPS offers. And you don't have to take my word for it or my client's word for it. If you look at the documentation attached to the operative complaint, it shows the government providing ground service, what it calls service-level ground, under the schedule contract to the government. That's the only service that was provided under the schedule contract. And so we know that the UPS could have made the same time guarantee to the government, that 95% of packages would arrive on time, had it offered the government ground as a next and second-day service, because that's what it knew it was going to offer. That's what it did, in fact, offer. And the packages got there in one day or two days, as required. The other point that I want to make to the court on that is that even if we say, even if we, which we submit you can't do at the pleading stage, in the face of our client's allegation that ground service is commercially offered for air and ground distances. But let's imagine for the sake of discussion, UPS ground is not a service that UPS offers commercially for next and two-day distances in a manner that would make it, in the manner that we're describing. What would still be true is that the government would still have wanted to receive a disclosure of UPS's ground rates. And that's because we see in the Commercial Sales Practices Forum that the government isn't just asking for the best prices, the lowest prices, in UPS's general commercial practice. It's saying, tell us whether there are any deviations from your commercial practice that even once, even on a one-time basis, ever result in lower prizes being offered to any customer than the next and second-day air rates that you are offering the government. And so even if we say somehow that UPS ground was not within UPS's commercial practice, it was required to disclose its ground rates to the government in that case as a deviation from commercial practice. The Commercial Sales Practices Forum could not have been any clearer. When you use ground rates, are you, is that a capital G or is that a lower case G? It's a capital G, Your Honor. And this goes to a couple of the points that Your Honor's made in the prior argument. You asked Judge Bybee, you know, do, are consumers actually asking when they go into the UPS store, what's the cheapest way to get this from point A to point B? There's at least one purchaser that asks, and that's the government. That is exactly what the government asked UPS on its commercial sales practice. But there's almost always a second question, whether you're a commercial or whether you're a government, which is, how long is it going to take? That's absolutely right. And, but what the government would have wanted to know here is that for large swaths of the country, that, that the cheapest service and the only service available was ground. And UPS lied to the government, it did not disclose that ground was the cheapest option, let alone the only available option for next day shipping and second day shipping. And let's, let's just look at this practically and be clear about the harm that UPS caused. So what, give me an example of where ground shipping would have been the only service available. That is the only service available, according to UPS's internal records, for all shipments traveling what we, what we refer to as the air and ground distances and what UPS... Okay, so you're going back to the difference between the mode of transportation, which is what you're relying on and... I'm not relying on that at all. And so to take your example of fast, faster and fastest, our overcharge claim and our fraudulent inducement under the schedule contract claim are not in any way dependent on the transport mode. They are dependent on UPS selling the government premium fastest service while actually providing, according to its own internal records, cheaper, fast service. Okay, I want to, I want to go back and drill down just a little bit here. So give me an example of where ground with a capital G is the only service available between two points in the United States. What, what, what we are alleging is that... No, I, I, you can just answer the question. Every single exemplar shipment in our third amended complaint is an example. And I, I... Okay, so give me an example between where Shreveport and Baton Rouge. That's a great example. Okay, is that the, and that's the only service that UPS offers between Shreveport and Baton Rouge is ground service with a capital G? According to its internal records, yes, Your Honor. And I would point you as an... So if I went into a UPS store in Baton Rouge and said I need to ship something to, to Shreveport and I'm willing to pay a great deal of money to get it there tomorrow, they would have said, gee, the only service we offer is, is ground with a capital G. We can't get you next day service. Oh no, no, Your Honor. They won't tell you that. They will... Then it's not the same service. Then it's not the only service that's available between Baton Rouge and, and, and Shreveport. Respectfully, Your Honor, if they sell you next day air, but then in their internal system, it says judge by these package service level ground. The ground is the service that it does. That's why I say you're going absolutely, you're, you're, you're pretending not to, but you're going back to the same question about mode of transportation because... You just dropped the capital G to a lowercase g. I'm not, Your Honor, because in their documents, they say in the same documentation, and I would refer you to volume six of the ER, 1364 through 1366, for an example. On the same page, they show that the service level invoiced is service level next day air. And at the bottom of the page, it says service level ground transport type trailer. And my point is, if it said service, that the invoice service level was called fastest at the top of the page, and at the bottom of the page, it said the service level provided was called fast, I would be making the same argument to you. The use of the words air and ground is not relevant to either the fraudulent inducement claim or the overcharge claim that we have made, except in the alternative. I think I followed that. You've used your time, but we'll give you a minute for rebuttal when the time comes. May it please the Court, James Siegel on behalf of Appellee's UPS and UPS Supply Chain Solutions. The False Claims Act is intended to encourage individuals with inside information to come forward in real frauds committed on the government. Later, Mark DeFatta had four separate attempts to plead such a claim. As the District Court correctly concluded, he failed every time. So first, DeFatta claimed UPS was charging the government for UPS air service while actually providing UPS ground service. That claim was premised entirely on UPS having represented that its UPS air services always include an airplane flight, however unnecessary. Because UPS never made any such representations, this claim failed. Next, DeFatta asserted that UPS fraudulently induced the government to enter a contract by failing to disclose that UPS ground service might meet the government's needs. This claim wasn't based on insider information at all, just publicly filed documents. In fact, counsel on the other side essentially just admitted that point by saying the fraudulent inducement claim is, quote, not in any way dependent on the transport mode. The only insider information this particular relator had related to the transport mode. He alleged he was an original source with respect to the fact that UPS transports some branded UPS air packages by a motor carrier. That was the possible jurisdictional basis for the suit in the first place. If the fraudulent inducement claim isn't based on that insider information, there's no basis for jurisdiction over it at all. So that alone is preclusive of that claim. On the merits, UPS made no misrepresentations because the government sought nationwide express delivery. That's something the ground can't do. I think it would help here to step back and take a look at the services that the government has defined, because these are responses to the government's requests. The government has defined two categories of services. There's a special item number of SIN 451-1, and that's an express delivery service. The way an express delivery service works, and this is, again, how the government has defined it, is that no matter the origin and destination of the package, you know exactly how long it will take to get there. So you select express delivery service, same day. No matter how far it's going, it will get there in the same day. If you select next day, it will get there the next day. These are the services that UPS responded to with its UPS air services and its UPS three-day select service. The second category of services, and again, this is the government's definition, they call it ground service. It's SIN 451-2. Now, this is a variable guarantee service, so that it may get there, and this is, again, in the government's definition, it may get there between one and seven days. So as few as one day, it might, in some circumstances, get there in the same amount of time as a shipment, but you don't know how long it will take until you put in the address and the destination. So, for example, from here to Los Angeles, it will likely take a day on ground. Either one of those two services will get there in the same time, but you can't be sure how long it will take for a ground package to get to New York unless you ask the carrier. So those are the two services as the government has defined them. Now, in the 2001 RFP, which is the basis for the fraudulent inducement claim, the government just asked for express delivery service. It said, please give us your same-day, next-day, two-day, and three-day services that can reach 95% of zip codes nationwide. It didn't ask for services that might go between some points within the United States in one or two days, but not 95% of zip codes. So ground was not responsive to that request. And because ground was not a responsive service, all of their claims related to this 2001 RFP fail. Council, for the other side, just claimed that we did offer, that UPS, in fact, offered services that did not satisfy this geographic scope requirement. She pointed to the UPS three-day select service. UPS three-day select service, as the UPS told the government, is available throughout the continental United States. So no matter where a shipper is within the United States, if you send it from Los Angeles to New York, it will get there within a three-day guarantee, no matter what. And that is 95% of zip codes. CONUS is how the government defined that, continental United States. That includes 95% of zip codes. So UPS three-day select was responsive to the government's request. That's why UPS offered it. It would not have offered it if it didn't satisfy that geographic scope requirement. Because UPS ground was not responsive to that geographic scope requirement. Does not reach 95% of zip codes within one, two, three days, that sort of time-sensitive guarantee. UPS did not offer it. So if we could just jump a little bit to the fraudulent overcharge claim. Certainly, Your Honor. I think it doesn't quite follow that same analysis. But I think you have asked us to find that the real relater has to have identified a specific breached contract provision, not just a fraudulent invoice, in order to have a claim. Do I understand your claim correctly? That is true in this case, yes. So a relater doesn't have to identify a breached contract term in every case. They have to identify a false claim. This is the False Claims Act. There has to be some false claim. Here, the claim is that UPS billed the government for a UPS next day air service. For that to be a false claim, the relater has to identify what in the service the government, excuse me, that UPS actually provided to the government was not its UPS next day service. In order to demonstrate that the UPS next day air service that UPS claimed to provide was not that service, they have to show that UPS made some sort of representation regarding its UPS next day air service. And that's where the requirement for a promise came in. So they can't identify... So the fact that it travels by truck does not negate that it's UPS next day air. That's exactly right, Your Honor. Because of all the stuff we discussed earlier. Precisely right. If UPS didn't represent UPS next day air services will go in an airplane, then there's nothing false in UPS saying I provided UPS next day air service, even though it went in a truck, unless UPS promised that it would not go in a truck. The fact that there were other packages on the truck that were going by some other level of service, by some other service that UPS offered is irrelevant. That's exactly right, Your Honor. So the relater has to plead with particular... Again, Rule 9b applies here. Plead with particularly what was false about UPS's statement. Were there consequences to UPS if something that was promised as next day service didn't arrive next day? It would breach the UPS guarantee. Okay. And what was the remedy? I believe the general remedy would be just return of the price that the consumer paid. I'm not sure if that's true with respect to the government. There might have been other provisions of government. That's generally the consequence for violation of UPS guarantees. I understand it. I mean, do we have information as to whether UPS sometimes bumps packages because it ends up with the full truck? And so it just says, well, these packages will have to wait tomorrow because we don't think we're going to have as many going tomorrow? I don't believe that's in the record, no, Your Honor. And I do think UPS tries to honor its guarantee. Sure, but UPS might say, okay, we're going to have to bump some things off this truck and these things are priority and these things are not. So the things that are not priority are going to get left on the dock. I think that's certainly a possibility, Your Honor. And that might be another reason that a rational consumer... I think this actually goes more to the prior cases. That might be a reason that a rational consumer might choose UPS air services into a set of UPS ground services. Here, again, the government is choosing between two sets of services that it itself has defined. There's the express delivery service and the variable delivery service. But the invoice that's going to be submitted for that service is going to say what? UPS next day air. But that will not be what was provided, correct? That's not correct, Your Honor. It's only not what was provided if you take as true their assumption that anything that goes via ground transportation is not, in fact, UPS next day air service. So that is the key link in that claim. If UPS next day air service doesn't involve an airplane ride and it doesn't, UPS is never represented, it does involve an airplane ride, then there's nothing false in UPS charging for UPS next day air service when the transportation didn't involve an airport, right? And so counsel, the other side has referred to this, these internal UPS documents, which say that the UPS has charged the government for UPS air and that the service that the package received, the service level is ground. That document, it's an internal document. It actually refers to the travel between two points, two distribution centers as part of the package's journey. And so what that demonstrates is that, as UPS acknowledges, many packages that are shipped via UPS next day air, UPS second day air, do, in fact, travel by truck. They do travel via ground transportation. And it would have been cheaper for the government if it had been billed that way. And doesn't the False Claims Act have as its intent to reach all kinds of fraud without qualification that could result in financial loss to the government? This is from U.S. versus Nyford White. So, but there would have to first be a false claim. So UPS would have to have made a false statement to the government. And simply charging for a more expensive service that the government asked for is not false unless the UPS didn't, in fact, provide that service. So UPS can't have made any false claims if it gave the government exactly what it would promise the government it was going to give it. And that's what happened here. The relator hasn't identified anything that UPS promised the government that UPS didn't deliver. I'd like to turn, if the court has no further questions, I'd like to just turn briefly to the Supply Chain Solutions claim, which was added at the end of this brief, excuse me, of the pleadings. So this claim, there is actually a promise to transport what's called air freight via an airplane that it's set forth in governing regulations. And assuming that Supply Chain Solutions actually did ship, or excuse me, coordinate shipments for the government, it likely would have invoked that promise and certified compliance with that. I use words likely and assuming because there are no allegations whatsoever. Supply Chain Solutions even shipped any or coordinated any shipments of freight pursuant to the standard tenders which would invoke this requirement. It's because the relator, Mark DeFatta, doesn't know anything about Supply Chain Solutions operations, what it's promised the government. It's purely speculative. The complaint is just devoid of any specific allegations regarding Supply Chain Solutions operations or its relationship with the government. So as the district court correctly concluded, that can't possibly satisfy the Rule 9b particularity standard as set forth in a bead. The court has any questions about Supply Chain Solutions? I don't believe it appears that we do. All right. I would like to just turn back briefly to the fraudulent inducement claim, the jurisdictional issue, because I do think that's key. In fact, the court has no jurisdiction over that claim. Every single allegation that the relator has brought with respect to this fraudulent inducement claim is based on publicly filed documents. So UPS disclosed the government's RFP request and its response to the RFP request only at that point did the relator add a claim with respect to the RFP request. There's no insider information. The relator himself has contributed to this claim. The only insider information in this case is the fact that UPS air packages sometimes travel via motor carrier. That's not relevant to this claim, and for that reason, it's jurisdictional. It's also not a secret. It's also true, Your Honor, that it was fully disclosed. UPS disclosed it to the government in this RFP proceeding. If the court has no further questions. I don't believe that we do. Thank you. And you may have some rebuttal time here. Thank you, Your Honor. Three points on rebuttal. My opponent began by stating that because I had said that the overcharge claim is not government, that's incorrect. And I want to point you back again to ER page 1366, volume 6, in which relator is the one who put before this court the key piece of information showing UPS indicating it was invoicing the government for next day error or second day error, service level next day error or second day error, while providing what UPS called service level ground with a capital G. Our relator was the source of that disclosure. And that documentation illustrates, Your Honor. It doesn't say capital G. Everything's in caps. Everything's in caps. It's all capitalized. So it's. Whether it's capitalized or not capitalized, what the document illustrates is the government or is UPS providing a cheaper level of service in its own words and invoicing for a more expensive service level. That's that's the disclosure at the heart of this case. And that is. Was that where the documents at 1366, 13? Yeah. At 1366, is that document a document generated by the government or generated by UPS? This document is generated by UPS. And these documents were provided by the relator in the course of his disclosure in this case. I also wanted to call the court's attention to the fact that my opponent continued to was a 95 percent requirement. That is untrue for the reason I explained. And he had no response to my argument that the geographic coverage requirement was 100 percent of zip codes, that services were offered to the government that did not meet the 100 percent zip code coverage requirement, and that that shows that services that offered partial next and second day coverage, whether ground or three day select, were responsive to the request for a proposal. And UPS understood them to be responsive to the request for proposal at the time that it entered the schedule contract. You had one more point and your time has expired, but go ahead and make your last point. I wanted to make the last point that I wanted to make was on the public disclosure bar. UPS is not correct that either the misrepresented state of facts or the true state of facts was revealed apart from the relator's disclosure in this case. The misrepresented state of facts was that UPS represented to the government in its request for proposal that its lowest responsive rates were its air rates. That's the misrepresented state of facts. The true state of facts was that the government's packages, next and two day packages, within the air and ground distances, would go by ground, would receive UPS ground service with a capital G. Thank you, counsel. Thank you. The case just argued is submitted and we appreciate the arguments from both counsel.
judges: Graber, Bybee, Arterton